UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

OLEG VOLK,

**Plaintiff,**

v.                          6:08-cv-94

DEREK ZEANAH,

**Defendant.**

## ORDER
### I. INTRODUCTION

This case arises from a dispute over ownership and control of an online discussion forum known as The High Road. Both the plaintiff Oleg Volk ("Volk"), and the defendant Derek Zeanah ("Zeanah") have asserted ownership of the forum's domain name as well as numerous claims under state and federal law. Three motions are currently before the Court: (1) Zeanah's Motion for Entry of Default against Volk regarding Zeanah's claim under the Computer Fraud and Abuse Act, (2) Volk's Motion for Partial Summary Judgment on the same claim, and (3) Zeanah's Motion for Partial Summary Judgment on Volk's claim for copyright infringement.

### II. BACKGROUND

The High Road is an internet forum designed to bring online users together to discuss firearms and related issues. The forum content is generated entirely by users, but each comment is reviewed and approved by a moderator before it is posted to the online conversation.

Volk and Zeanah initially connected through The High Road's predecessor forum, The Firing Line. When The Firing Line was discontinued in December 2002, Volk and Zeanah launched The High Road, which was located at the web address TheHighRoad.org. *See* Doc. 7 at 2; Doc. 39 at 4.

Volk contends that he "stepped forward" to create The High Road upon hearing of the decision to take down The Firing Line. *See* Doc. 7 at 2. He claims he selected and arranged the topics of discussion contained on The High Road and designed its rules for accepting user posts. *See* Doc. 55 at 5; Doc. 7 at 2.

Zeanah, who owns a computer consulting company, served as the forum's systems administrator and web host. *See* Doc. 39 at 4. In other words, Zeanah provided and maintained the servers on which The High Road's data were stored. *See* Doc. 40 at 2; Doc. 42 at 2. Beginning in 2006, Zeanah became the owner of record of The High Road's domain name, TheHighRoad.org. *See* Doc. 39 at 6.

In July 2008, Michael Tenny ("Tenny"), the owner of the website CheaperThanDirt.com ("Cheaper Than Dirt"), expressed interest in acquiring rights to The High Road. *See* Doc. 55 at 1-2. Cheaper Than Dirt is an online retailer of discounted firearms and ammunition. *See* Doc. 61-1 at 6, 9-10. Tenny saw the opportunity to communicate with the 450,000 gun enthusiasts who visited The High Road every month as a valuable marketing tool. *See* Doc. 61-4 at 8.

Volk and Zeanah disagreed over the proper response to Tenny's interest. Volk wanted to sell or license rights in The High Road to Tenny in exchange for an annual payment of $150,000—paid exclusively to Volk. *See* Doc. 55 at 6. Zeanah wanted to sell advertising space on the forum to Tenny, and wanted to receive some share of the revenue. *See* Doc. 55-2 at 2.

When Volk announced his intent to sell The High Road, Zeanah responded that he could prevent any transfer of the forum because he owned the domain name TheHighRoad.org. *See* Doc. 55 at 2. In response, Volk filed a Complaint requesting a judicial declaration that the domain name TheHighRoad.org belonged to him. *See* Doc. 1 at 4-8.

On or about October 13, 2008, Volk also hired a company to access Zeanah's computers and copy all content from the website TheHighRoad.org. *See* Doc. 42 at 2-3. He then re-posted the entire forum at the nearly identical web address of TheHighRoad.us. *Id.* This resulted in two versions of The High Road at different web addresses. Zeanah then filed an Answer to Volk's Complaint containing numerous counterclaims. *See* Doc. 39.

Further, in November of 2008, Volk registered a copyright for The High Road. *See* Doc. 55 at 3. On December 2, 2008, he informed Zeanah that displaying the original The High Road forum on the internet infringed his copyright and demanded that Zeanah take down his website. *See id.* When negotiations between the parties failed, Volk amended his Complaint to include a claim for copyright infringement. *See* Doc. 7 at 12-23.

### III. ANALYSIS

#### A. Motion for Entry of Default

Zeanah moves the Court to enter default against Volk with respect to Zeanah's claim that Volk violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq., by hiring a private firm to access his computers and copy The High Road. *See* Doc. 49 at 1-2. Federal Rule of Civil Procedure 55(a) provides as follows: "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default."

Zeanah's argument for entry of default arises from the following timeline: on January 25, 2010, the Court granted Volk's Motion for Judgment on the Pleadings and dismissed Zeanah's original CFAA claim. *See* Doc. 38. The court granted Zeanah a five-day period to amend his pleadings, and Zeanah filed an amended CFAA claim on January 27, 2010. *See* Doc. 39. On January 28, 2010, Volk filed a Motion for Summary Judgment on Zeanah's CFAA counterclaim. *See* Doc. 40.

Under Federal Rule of Civil Procedure 15(a)(3), Volk was required to respond to Zeanah's amended counterclaim within fourteen days of filing, by February 10, 2010. Volk failed to file a responsive pleading before that date, and on February 19, 2010, Zeanah filed the instant Motion for Entry of Default. *See* Doc. 49. On March 4, 2010, Volk filed his Answer to Zeanah's amended CFAA claim. *See* Doc. 57.

2

As stated above, Federal Rule of Civil Procedure 55(a) requires entry of default against a party who "has failed to plead or otherwise defend" in response to an adverse pleading. Motions for summary judgment can constitute a filing that "otherwise defend[s]" against an adverse pleading. *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 298 (1968) (upholding grant of summary judgment to defendant who never answered complaint during more than six years of litigation); *Abdullah v. City of Jacksonville*, 242 F. App'x 661, 663 (11th Cir. 2007); *Rashidi v. Albright*, 818 F. Supp. 1354, 1355 (D. Nev. 1993), *aff'd* 39 F.3d 1188 (9th Cir. 1994); *Hise v. Philip Morris Inc.*, 208 F.3d 226, 2000 WL 192892 at *3 (10th Cir. 2000).

A court has discretion to decline to enter default where a responsive pleading will not "clarify issues and assist the court in determining whether there are any genuine issues of fact." *Rashidi*, 818 F. Supp. at 1355; *see also Hise*, 2000 WL 192892 at *3. Moreover, where the opposition to a claim "would [not] have been any different or any more comprehensive had a response to the complaint been filed," an answer is "entirely useless" in light of "the dispositive nature of the action on the motion." *Rashidi*, 818 F. Supp. at 1357.

Here, Zeanah's original CFAA claim was dismissed because he included no factual allegations of loss in his answer. *See* Doc. 38 at 3. Zeanah did, however, provide these allegations as an exhibit to his Response to Volk's Motion for Judgment on the Pleadings. *See* Doc. 18-1 at 2-3. His amended CFAA claim merely transferred these allegations of loss into the body of his counterclaim. *See* Doc. 39 at 19-21.

Thus, in the course of moving for judgment on the pleadings, the Court and the parties learned the factual allegations Zeanah would incorporate into his amended counterclaim. Volk's response to Zeanah's counterclaim would not have clarified any factual issues for the Court.

Moreover, Volk's Motion for Summary Judgment argues two points: (1) that Zeanah suffered no damage as defined by the CFAA, and (2) that Zeanah's allegations of loss, absent a showing of CFAA-defined damage, do not establish a claim under the CFAA. *See* Doc. 40.

Even if Volk had responded to Zeanah's amended counterclaim, the arguments Volk raises in his Motion for Partial Summary Judgment, as well as Zeanah's opposition, would be no different. Volk's first argument, and Zeanah's response thereto, are made on the basis of Zeanah's deposition. *See* Doc. 40 at 5-7. The claim that Zeanah failed to offer testimony establishing damage under the CFAA would not have changed if Volk had answered Zeanah's counterclaim.

Volk's second contention argues only a point of law. *See* Doc. 40 at 7.[1] As such, the argument remains unchanged regardless of the content of specific allegations of loss. Accordingly, Zeanah's opposition to Volk's

---

[1] The CFAA defines both "damage" and "loss" as potential results of an unauthorized intrusion into another's computer. *See* 18 U.S.C. §§ 1030(e)(8) and 1030(e)(11). Volk's legal argument is that the CFAA does not permit actions that seek to recover only losses. Instead, he claims that losses are recoverable only in cases where a plaintiff can also show damage.

3

argument would be identical to its present form even if Zeanah had received a responsive pleading from Volk.

In short, Volk and Zeanah were fully aware of the allegations underlying Zeanah's CFAA claim and could brief comprehensively all issues it presented. For the same reason, Zeanah suffers no prejudice by having to respond to Volk's Motion for Summary Judgment.

Zeneah's Motion for Entry of Default is, therefore, **DENIED.**

### B. Motions for Partial Summary Judgment
#### 1. Summary Judgment Standard

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The moving party is "entitled to a judgment as a matter of law" when the non-moving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence on which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

#### 2. Volk's Motion for Partial Summary Judgment

Volk moves for summary judgment on Zeanah's CFAA counterclaim. The CFAA provides that "whoever intentionally accesses a computer without authorization . . . and thereby obtains . . . information from any protected computer . . . shall be [subject to criminal penalties]." 18 U.S.C. § 1030(a)(2)(C). The CFAA also provides a civil cause of action to "any person who suffers damage or loss by reason of" a CFAA violation, provided that the "damage or loss" amounts to "at least $5,000" within one year of the violation. *Id.* at §§ 1030(g), 1030(c)(4)(A)(I).

Volk admits that he hired a third party to access Zeanah's computer for the purpose of copying the content of The High Road and reposting it at a new web address. *See* Doc. 40 at 9. Volk does not argue that he did not violate the CFAA. Rather, he argues that Zeanah incurred no "damage" under the CFAA as a result of his intrusion, and that absent a showing damage, Zeanah is precluded from recovering any losses. *See* Doc. 40 at 9-11.

##### a. Damages under the CFAA

The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). An earlier Court Order found that "the mere copying of data," absent some evidence that the "integrity,

4

stability, or accessibility of . . . computer data" were altered or diminished, does not constitute "damage" under the CFAA. Doc. 38 at 3 (citing *Cont'l Group, Inc. v. KW Prop. Mgmt., LLC*, 622 F. Supp. 2d 1357, 1371 (S.D. Fla. 2009)).

Zeanah offers little more than speculation that Volk's copying diminished the integrity or accessibility of The High Road's data. Regarding the integrity of the forum data, Volk merely copied the data from one public internet forum and posted them at another public internet forum. *See* Doc. 38 at 3. The data that constitute The High Road were unaffected, and at worst duplicated in full, by Volk's intrusion. Thus, their integrity was not diminished.

Regarding the forum's accessibility, Zeanah has not shown that any forum participant was excluded from using the forum while Volk copied its data. Zeanah stated that, although he believes that some users were excluded from using The High Road, he "couldn't quantify" their number. Doc. 46-1 at 5. Instead, he insists that the server traffic during Volk's copying was so high that "the odds are" that some users "probably" lost access to The High Road. *Id.* Such assertions offer no evidence of inaccessibility but merely "metaphysical doubt" that Zeanah's servers were available. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, Zeanah has not shown that Volk's intrusion into his computer caused "damage" under the CFAA.

### b. Loss under the CFAA

The CFAA defines "loss" as "any reasonable expense to any victim" of a CFAA violation. 18 U.S.C. § 1030(e)(11). An earlier Order of this Court found it "fairly evident" that the costs incurred by Zeanah in assessing harm to and re-securing his computers constituted CFAA losses. Doc. 38 at 4. Volk does not contest this ruling; instead, he argues that without CFAA damage, losses are not independently recoverable under the CFAA. *See* Doc. 40 at 9.

Volk cites as authority for his argument cases holding that the CFAA compensates only those losses arising from an interruption in service. *See* Doc. 40 at 9-10, (citing, *e.g.*, *Cohen v. Gulfstream Training Acad., Inc.*, No. 07-60331-CIV, 2008 WL 961472 (S.D. Fla. 2008)). Since Zeanah's servers suffered no interruption in service, Volk claims that Zeanah's losses are not recoverable under the CFAA. *See* Doc. 40 at 9-10.

The greater weight of case law, however, holds that losses are independently recoverable under the CFAA. The CFAA defines "loss" as "any reasonable expense" incurred as a result of a CFAA violation. 18 U.S.C. § 1030(e)(11). Many courts have held that the "costs of investigating or remedying" a security breach constitute just such a reasonable expense "regardless of whether there is an interruption of service" or other damage as defined by the CFAA. *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1036 (N.D. Ill. 2008) (citing *First Mortg. Corp. v. Baser*, No. 07 C 6735, 2008 WL 4534124 at *3 (N.D. Ill. 2008)); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009); *Pac. Aerospace & Elecs., Inc. v.*

5

*Taylor*, 295 F. Supp. 2d 1188, 1196-97 (E.D. Wash. 2003).

In fact, the test for whether a loss is compensable under the CFAA is not whether service was interrupted, but rather whether the victim's response to a CFAA violation was reasonably related to the nature of the intrusion. *See Resdev, LLC v. Lot Builders Ass'n, Inc.*, No. 6:04-CV-1374-ORL-31-DAB, 2005 WL 1924743, at *4 (M.D. Fla. 2005) ("costs . . . directly associated with, or with addressing, an unauthorized-computer-access event" are recoverable as losses under the CFAA). For example, when a former employee installed specialized software on his employer's computers that made the employer's electronic financial records unrecoverable, the costs of assessing harm to the computers and the expenses incurred in hiring computer forensic experts to restore deleted files constituted CFAA losses. *Patrick Patterson Custom Homes, Inc.*, 586 F. Supp. 2d at 1030, 1036. In contrast, when a foreign server failed to harm a company's network through mass emailing, costs incurred to identify the mass sender were not CFAA losses because they were not necessary to assess harm to the company's system or to "resecure the system." *Tyco Int'l (US), Inc. v. John Does, 1-3*, No. 01 Civ. 3856(RCC)(DF), 2003 WL 23374767, at *3 (S.D.N.Y. 2003).

Zeanah has listed six expenditures that resulted from Volk's conduct that potentially constitute the threshold $5,000 in losses. *See* Doc. 39 at 19-20. First, Volk's copying of The High Road's data caused increased server traffic, the costs of which Zeanah estimates at $1,000. *See id.* Zeanah claims to have spent at least 10 hours—worth $1,200—investigating and diagnosing the breach. *See id.* He further purchased a new server for approximately $2,800 in order to migrate data (at a cost of $1,200) to a new computer. *See id.* Zeanah engaged an expert in computer forensics to diagnose the security breach for a fee likely to exceed $4,000. *See id.* Lastly, Zeanah estimates the cost of maintaining heightened security parameters on his computers at $3,500. *See id.*

Viewing all evidence in the light most favorable to Zeanah, Zeanah appears to have responded reasonably to an unauthorized intrusion into his computer.

Volk's Motion for Partial Summary Judgment is, therefore, ***DENIED***.

### 3. Zeanah's Motion for Partial Summary Judgment

Zeanah has moved the court for summary judgment on Volk's claim of copyright infringement. *See* Doc. 42. In his Complaint, Volk alleged that he owns a valid copyright to The High Road, and that Zeanah's infringement of this copyright caused him to lose profits. *See* Doc. 7 at 9-10.

Zeanah responds with five arguments: (a) that Volk's copyright is invalid because Volk did not author the copyrightable elements of The High Road; (b) that Zeanah cannot have infringed Volk's copyright because he never copied Volk's protected work; (c) that no infringement occurred because Zeanah's forum is not substantially similar to Volk's forum; (d) that no infringement occurred because Zeanah was displaying the forum under an implied

6

nonexclusive license; and (e) that even if infringement occurred, Volk has no right to statutory damages, actual damages, or attorneys' fees. *See* Docs. 42, 61. The Court will address these arguments in turn.

### a. Invalid Copyright

Zeanah first argues that Volk's copyright is invalid because Volk did not author the copyrightable elements of The High Road. *See* Doc. 42 at 3-4.

The High Road was copyrighted as a "compilation." Doc. 7 at 13. A compilation is a work "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

A compilation copyright does not protect the data—in this case, the user posts—that it incorporates. Instead, it protects only the selection of data for inclusion or the arrangement of such data within the compilation. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 359 (1991) ("copyright protects only . . . the selection, coordination, and arrangement of facts" within a compilation). Zeanah argues that Volk is not the author of either the selection or arrangement of user posts within The High Road.

### i. The Selection of User Posts

Zeanah argues that Volk does not have a copyrightable interest in The High Road because a group of forum moderators, not Volk, is responsible for selecting the user posts that are published on The High Road. *See* Doc. 42 at 4.

The author of a copyrighted work is the person who actually created the original work. *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). The selection of data contained in a compilation constitutes an original work only to the extent that a person exercised "judgment in choosing which facts from a given body of data to include in [the] compilation." *Warren Publ'g, Inc. v. Micodos Data Corp.*, 115 F.3d 1509, 1518 (11th Cir. 1997) (citing *Key Publ'ns, Inc. v. Chinatown Today Pub. Enters., Inc.*, 945 F.2d 509, 513 (2d Cir. 1991)). Thus, the author of a The High Road's selection of user posts is the person who actually exercised judgment in selecting user posts for inclusion in The High Road.

A copyright claimant who did not actually create an original work may still be considered its author if the work was created as a work for hire. *Comm. for Creative Non-Violence*, 490 U.S. at 737. Thus, to claim authorship of The High Road's selection of user posts, Volk must show either that he exercised judgment in selecting the user posts on The High Road, or that the exercise of judgment that resulted in that selection was a work for hire.

It is implausible that Volk is the sole person who selects which user content is posted on The High Road. More than 450,000 users visit The High Road monthly. *See* Doc. 61-4 at 8. Approximately eleven months ago, Zeanah pointed out in his deposition that the forum already contained "over 6 million posts . . . by up to 80,000

7

people." Doc. 46-1 at 4. Volk admits that the forum's content is updated "constantly." Doc. 55 at 4.

Volk, however, had a job in addition to his work with The High Road that provided a maximum of twenty days paid leave per year. *See* Doc. 61-9 at 1. Volk also spent a number of days traveling to Texas to discuss the sale of The High Road, and did so while The High Road's selection of user posts was "constantly" updated. *See* Doc. 61-2 at 1; Doc. 55 at 4.

In fact, Volk has not claimed sole responsibility for the selection of user content on The High Road. He states that he "selected . . . *discussion topics*," not user content. Doc. 7 at 3 (emphasis added). When challenged, he states only that his "selection . . . of user generated content had *never been questioned*." Doc. 55-2 at 2 (emphasis added). In short, Volk has offered no evidence that he selected the user content that makes up The High Road.

Volk's only substantive influence on the selection of user posts came from rules he allegedly developed for determining which posts would be excluded from the forum. *See* Doc. 7 at 2. Volk, however, has neither alleged nor provided evidence that forum moderators' selection of data constituted a work for hire.[2]

Considering the foregoing, Volk's copyright does not protect the selection of user posts found on The High Road.

### ii. The Arrangement of User Posts

Zeanah alleges that Volk's copyright is not valid because Volk did not create the "layout" of The High Road. Doc. 61 at 1. Instead, he claims that templates contained in "off-the-shelf software" and the forum's moderators determined the forum's appearance—its "layout, heading, colors, etc."—and the organization of its data. *Id.* at 4.

Generally, the short phrases that make up the subjects and topics by which data are organized in a compilation are excluded from copyright protection under 17 U.S.C. § 102. Their selection and arrangement within a compilation, however, is copyrightable to the extent that it exhibits originality. *Feist Publ'ns, Inc. v. Rural Tel. Servs. Co.*, 499 U.S. 340, 358 (1991); *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1141 (11th Cir. 2007).

Volk claims to be responsible for the arrangement of user posts "by selected subjects, topics, and subsets." Doc 55 at 5. Although no individual could have reviewed and selected the every post on the website, it is conceivable that one person selected and arranged the categories into which those posts are organized. As a result, Volk's claim of authorship to the arrangement of

---

[2] To show that forum moderators' selection of data constituted a work for hire, Volk would have to show either that (a) the forum moderators were Volk's servant agents, or that (b) the forum moderators were independent contractors, and each moderator agreed in writing that his or her selection constituted a work for hire. *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989); 17 U.S.C. § 101. Volk's submissions, however, mention only in passing that "volunteer staff" and "volunteers" were involved in running The High Road. Doc. 7 at 3; Doc. 55-2 at 2. The mention of volunteers is insufficient to create a disputed issue of fact regarding whether forum moderators selected user posts as a work for hire.

user posts suffices to create a disputed issue of fact.

Zeanah may be correct in stating that software templates created the "layout, heading, [and] colors" of The High Road, but that does not preclude copyright protection for Volk's arrangement and selection of topics. At most, Volk's claims of authorship stand directly against Zeanah's denials thereof, and the Court will not weigh credibility on a motion for summary judgment. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010) ("On summary judgment, . . . neither we nor the district court are to undertake credibility determinations.").

Thus, Zeanah has not shown that Volk has no valid copyright protecting the arrangement of selected topics on The High Road.

### b. Zeanah Never Made a Copy of The High Road

Zeanah contends that he cannot have infringed Volk's copyright because he never copied The High Road. *See* Doc. 61 at 4-5. Indeed, it was Volk, not Zeanah, who copied The High Road and re-posted it on another server under a new web address. *See* Doc. 42 at 3. Nonetheless, Volk argues that Zeanah's continuation of the original forum violates his exclusive right of public display. *See* Doc. 55 at 9.

"Anyone who violates *any* of the exclusive rights of the copyright owner" set forth in 17 U.S.C. § 106 "is an infringer of copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (emphasis added). Thus, a person who publicly displays a protected work infringes its author's copyright regardless of whether the infringer actually copied the work. *See, e.g., Playboy Enters., Inc. v. Frena*, 839 F. Supp. 1552, 1556 (M.D. Fla. 1993) ("There is no dispute that Defendant . . . supplied a product containing unauthorized copies of a copyrighted work. It does not matter that Defendant . . . claims he did not make the copies."). Making a copyrighted work available for viewing on an internet server constitutes "public display" of the work. *Id.* at 1556-57; *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 716 (9th Cir. 2007).

To the extent that Volk owns a copyright protecting The High Road, he enjoys the exclusive right to display The High Road publicly. 17 U.S.C. § 106(5). Zeanah admits that he has continued to make a version of The High Road available for viewing and commenting on the internet. *See* Doc. 42 at 9; Doc. 61 at 4. Thus, the fact that Zeanah did not copy The High Road in order to display it does not preclude Volk from maintaining an infringement action.

### c. Substantial Similarity

Zeanah next argues that he did not infringe Volk's copyright because on the date Volk claims the infringement commenced Zeanah's version of The High Road was not substantially similar to Volk's version. *See* Doc. 61 at 2. Volk first set up his version of the forum The High Road on October 13, 2008, but he seeks damages for infringement beginning on December 2, 2008. *See* Doc. 55 at 5. According to Zeanah, by December 2, 2008, the "constant updates to these respective websites by each

website's respective users" had resulted in "entirely different websites." Doc. 61 at 4.

Zeanah further contends that Volk's claim of infringement must be governed by a "virtual identicality" as opposed to a substantial similarity test. Doc. 61 at 5. Generally, whether a compilation infringes the copyright that protects another compilation is determined by asking whether the challenged work is substantially similar to the protected work. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1148-49 (11th Cir. 2007). Zeanah contends, however, that the case *MiTek Holdings, Inc. v. Acre Engineering Co.*, 89 F.3d 1548 (11th Cir. 1996), established a more stringent standard for computer databases, that a computer database does not infringe a copyright unless it is "virtually identical" to another computer database. Doc. 61 at 5.

*MiTek* is not on point in this dispute. Cases subsequent to *MiTek* have held that *MiTek* does not govern infringement among compilations. *See, e.g., BUC Int'l Corp.*, 489 F.3d at 1148-49. Thus, whether Zeanah's version of The High Road infringes Volk's copyright must be judged under the substantial certainty test.

Because the court has already found that Volk has no copyright protection for the selection of user posts contained in his version of The High Road, the content of the posts is irrelevant in determining substantial similarity. Volk's copyright protects only his arrangement of The High Road by selected topics.

Zeanah has offered no evidence that, on December 2, 2008, the arrangement of his version of The High Road differed substantially from the arrangement of Volk's version of The High Road. As stated above, his Motion mentions only divergent selections of user posts. *See* Doc. 61 at 4. Thus, the similarity between the copyrightable elements of the two websites remains a disputed issue of fact.

### d. Implied Nonexclusive License

Zeanah next contends that he is not liable for infringement because Volk granted him an implied nonexclusive license to display The High Road. *See* Doc. 42 at 8. Such a license is created when "one person creates a work at another's request and hands it over, intending that the other party will copy and distribute it." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 2009).

Even assuming that Volk created The High Road and handed it over to Zeanah for display, Zeanah acknowledges that a nonexclusive license precludes an infringement action only while the license is in effect. *See* Doc. 42 at 9; *Wilchombe*, 555 F.3d at 956. When permission to use a copyrighted work is withdrawn, the license terminates. *Jacob Maxwell, Inc. v. Veeck*, 110 F.3d 749, 753 (11th Cir. 1997). Volk expressly withdrew any permission to Zeanah's continued display of The High Road on December 2, 2008. *See* Doc. 55-2 at 5-6. Thus, any nonexclusive license to display The High Road also terminated on that date.

### e. Volk's Right to Damages

Lastly, Zeanah argues that, even if he has infringed Volk's copyright, Volk is not

10

entitled statutory damages, actual damages or attorneys' fees. Generally, a copyright owner is entitled to recovery of either statutory or actual damages for infringement. *See* 17 U.S.C. § 504(a).

### i. Statutory Damages and Attorneys' Fees

A copyright holder may not recover statutory damages or attorneys' fees for "any infringement of copyright in an unpublished work commenced before the effective date of registration." 17 U.S.C. § 412(1). The purpose of section 412 is to "provide copyright owners with an incentive to register early and often." *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). Accordingly, section 412 not only bars statutory damages for infringement that occurred before a work's registration, it also precludes statutory damages for ongoing, post-registration infringement. *See, e.g., U2 Home Entm't, Inc. v. Hong Wei Int'l Trading, Inc.*, No. 04 Civ. 6198, 2008 WL 3906889, at *15 (S.D.N.Y. 2008) ("as long as infringement commenced before the date of registration, statutory damages and attorneys' fees are barred even if infringement continued after the date of registration"); *see also Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 143 (5th Cir. 1992).

For purposes of determining when section 412's statutory damages bar is triggered, an infringement commences "when the first act in a series of infringements of the same kind occurs." *Amador v. McDonald's Corp.*, 601 F. Supp. 2d 403, 409 (D.P.R. 2009) (citing *Derek Andrew, Inc., v. Poof Apparel Corp.*, 528 F.3d 696, 706 (9th Cir. 2008)). The first public display of a protected work in violation of its copyright constitutes the "first act" of the ongoing infringement. *See id.* at 410 (finding that infringement commenced when infringer first publicly displayed the copyright holder's photographs in its restaurant). As long as infringing conduct constitutes "a continuation of . . . infringement that 'commenced' prior to registration," the infringement is ongoing and not subject to statutory damages or attorneys' fees. *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996) (finding that infringer's use of copyright holder's computer program to make ticket sales before and after date of registration was ongoing infringement).

Neither party disputes that Zeanah has publicly displayed The High Road continuously from December 2002 until the present. It is also undisputed that Volk first published The High Road on October 13, 2008 and obtained copyright registration on November 6, 2008. *See* Doc. 61 at 3; Doc. 55 at 5. Thus, the only remaining issue is determining whether Zeanah's first act of infringement occurred before October 13, 2008.

The first date on which Zeanah could have infringed Volk's copyright is July 14, 2008, when Volk first claimed a copyright to The High Road and the approximate date on which the dispute of ownership of The High Road began. *See* Doc. 7 at 13; Doc. 42 at 2; Doc. 55 at 1-3. Volk, however, argues that no acts of infringement occurred until December 2, 2002. *See* Doc. 55 at 7. Until that date, Volk claims that he "consented" to

11

Zeanah's posting of The High Road because he "did not want to create an interruption in the participation by thousands of daily users." Doc. 55 at 3.

An author's consent does not eliminate infringement; rather, it waives the author's right to sue for infringing conduct. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 956 (11th Cir. 1997) ("A copyright owner waives his right to sue for copyright infringement while the nonexclusive license is in effect."). Moreover, yielding to Volk's argument would undermine section 412's purposes and provide a blueprint for circumventing section 412's statutory damages bar. Thus, Zeanah's first act of infringement occurred under section 412 when he committed an act that, but for Volk's consent, would have constituted infringement.

Volk claims that Zeanah "effectively hijack[ed]" The High Road in the course of discussions with Tenny by displaying and maintaining full technical control of the forum despite Volk's "repeated demands" to transfer control. Doc. 55 at 2; Doc. 7 at 5. This "hijacking" of The High Road by Zeanah constituted the first act that, but for Volk's consent, would have constituted infringement. *See* Doc. 55 at 3. Although neither Volk nor Zeanah can specify the date on which Volk began to contest Zeanah's right to display the website, Volk admits that his dispute with Zeanah over the right to control the forum began before October 13, 2008. *See id.* at 2-3. Thus, Zeanah's first act of infringement occurred before The High Road's publication and copyright registration. Volk is therefore precluded from recovering statutory damages or attorneys' fees.

### ii. Actual Damages

A copyright owner "is entitled to recover the actual damages suffered by him . . . as a result of the infringement . . . ." 17 U.S.C. § 504(b). The measure of actual damages includes both the infringer's profits as well as the copyright owner's lost revenue resulting from the infringement. *Montgomery v. Noga*, 168 F.3d 1282, 1294-95 (11th Cir. 1999).

In seeking actual damages, "the plaintiff bears the burden of proving that the infringement was the cause of [his] loss of revenue." *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1170-71 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S.Ct. 1237, 1249 (2010). Thus, "the plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." *Id.*

Volk does not dispute that The High Road is a non-commercial forum that generates no revenue, and that Zeanah has derived no profits through infringement. *See* Doc. 42 at 8; Doc. 55 at 6-7. Instead, Volk claims that "Mr. Tenny was willing to pay Volk *at least* $150,000 per year for the privilege of hosting The High Road website," but that an agreement was impossible because Zeanah "refused to cease infringement." Doc. 55 at 6; Doc. 55-2 at 4.

Thus, under the damages principles outlined above, Volk's must show that: (a) it is reasonably probable that he would have entered into an agreement with Tenny for the web hosting of The High Road, and (b) Zeanah's infringement is the reason that no such agreement came to fruition. *See Montgomery*, 168 F.3d at 1294; *Data Gen. Corp.*, 36 F.3d at 1170-71.

Volk has made no such showing. As evidence that he would have entered such an agreement, Volk has offered only his own affidavit stating that Tenny "offered to pay *at least* $150,000 per year" to host The High Road and that, before Zeanah's infringement, Volk and Tenny had "planned" to enter a "contractual arrangement." Doc. 55-2 at 4. Zeanah, however, has provided Tenny's deposition, which paints a more complete picture of the "offer" to which Volk alludes. *See* Doc. 61-1, Doc. 61-2, Doc. 61-3 and Doc. 61-4.

In the summer of 2008, the creator of MySpace.com convinced Tenny that adding "communities" to his website in the form of internet fora would increase his sales and advertising opportunities. *See* Doc. 61-1 at 15. As the owner of a firearm and ammunition retailer, Tenny conducted an internet search of internet fora that discussed firearms with the goal of integrating those websites into Cheaper Than Dirt. *Id.* at 20.

Tenny and his staff found approximately ten websites that were "close to what we wanted" and contacted "4 or 5" of those sites. *Id.* at 23. One of those contacted was The High Road.

However, the fact that Tenny showed interest in The High Road is of little value to Volk. Tenny "entered into negotiations with all" of the "4 or 5" internet fora he contacted. Doc. 61-4 at 6; Doc. 61-1 at 23. Cheaper Than Dirt, however, purchased an interest in only one website. *See* Doc. 61-4 at 6. Tenny attributes his company's reluctance to convert negotiations into concrete deals to his staff's preference for developing the internet fora that increase Cheaper Than Dirt's internet traffic internally instead of purchasing them. *Id.*

Moreover, Volk's discussions with Tenny showed no special promise. From the beginning, Tenny's aim was to "append" The High Road to Cheaper Than Dirt to increase the web traffic of his website. *See* Doc. 61-2 at 4. To do so, Tenny was "completely open to offers and suggestions." *Id.* at 3. His original proposal from August of 2008 offers to pay $150,000 to neither Volk nor Zeanah, but rather to The High Road itself. *See* Doc. 61-8 at 6. Tenny was indifferent to who received the money. He suggested it could be used as a salary, as an endowment, or as a donation to the firearms industry. *See* Doc. 61-2 at 11.

Although Volk visited Texas to meet Tenny, their discussions remained "very superficial." Doc. 61-2 at 5. Tenny spent little time with Volk during his visit, apparently preoccupied with South African visitors. *See* Doc. 61-8 at 6.

Even assuming that Tenny had made an acceptable offer to Volk, Volk responded with a flurry of counteroffers that Tenny could not accept. Volk wanted to be employed by Cheaper Than Dirt but wanted a salary significantly greater than that of Tenny's other employees. *See* Doc. 61-3 at

13

4. Volk wanted to stay in Tennessee despite the fact that Cheaper Than Dirt does not hire employees who will not relocate to Texas. *See id.* at 3-4. When told he might be required to move to Texas, Volk agreed to relocate only if Tenny agreed to purchase his house if it did not sell for $170,000 after 40 days on the market. *See id.* at 4. Volk also requested for-cause or term employment despite Cheaper Than Dirt's policy of at-will employment. *See* Doc. 61-9 at 1. In fact, Tenny saw his attempts to reach an agreement as "attract[ing] fire" from Volk. *Id.* at 6.

Moreover, Volk claims no damages resulting from infringement that occurred before December 2, 2008. The only offer from Tenny to Volk that could have existed at this time was an offer of at-will employment in Texas that included a $90,000 yearly fee for hosting rights to The High Road. *See* Doc. 61-9 at 3. And the existence of this offer on December 2, 2008, is far from certain, since Tenny saw the terms of the offer as viable only within "the August, September, October [2008] time frame." Doc. 61-3 at 6. Nevertheless, Volk failed to respond to the offer. *See* Doc. 61-4 at 2. Tenny attributes his failure to respond not to Zeanah's infringement, but instead to Volk's reluctance to move to Texas. *See id.* at 1.

In response to this evidence, Volk has offered only an affidavit in which he claims that Tenny "offered to pay" him $150,000 to host The High Road. Doc. 55-2 at 4. Even if true, Volk fails to address the many counteroffers he made or the unacceptable nature of those counteroffers for Cheaper Than Dirt. Thus, even when viewed most favorably to Volk, the filings of the parties fail to establish with reasonable probability that Volk would have entered a licensing agreement with Tenny or Cheaper Than Dirt. *See Data Gen. Corp. v. Grumman Sys. Support Corp.*, 1147, 1170-71 (1st Cir. 1994), *abrogated on other grounds* by *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S.Ct. 1237, 1249 (2010). Volk is therefore precluded from recovering actual damages for copyright infringement.

Thus, the Court grants Zeanah's Motion for Partial Summary Judgment with regard to statutory damages, attorneys' fees, and actual damages and denies the remainder thereof.

## IV. CONCLUSION

For the foregoing reasons, Zeanah's Motion for Entry of Default is **DENIED**, Volk's Motion for Summary Judgment is **DENIED**, and Zeanah's Motion for Summary Judgment is **GRANTED IN PART, DENIED IN PART**.

This 27th day of September 2010.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA